[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR CONTEMPT AND MOTION TO MODIFY
I. Introduction
The marriage of the parties was dissolved on October 30, 1992. On November 5, 2001 the plaintiff filed a motion to modify the judgment and a motion for contempt (#127). These motions were heard by the court on February 1, 2001. Subsequently, the parties submitted briefs. Having considered the evidence and the legal arguments of the parties, the court concludes that the motion for contempt must be denied, and the motion to modify should be granted for the reasons stated below.
II. Facts
The issues involved in this case arise out of the separation agreement of the parties which was approved by the court (Steinberg, J) and incorporated in the judgment of October 30, 1992. At that time, the defendant was unemployed and was receiving unemployment compensation of $288 per week. Although the separation agreement provides that the defendant shall continue to pay $805 per month towards the mortgage on the marital home, this was not actually designated as child support. But, it is clear that the mortgage payment was intended to be in lieu of child support. The figure of $805 was subsequently increased to $850 per month when the mortgage and insurance increased. The defendant paid these figures regularly.
The defendant continued to receive $288 per week in unemployment compensation until August 1993 when he began working as a self employed mortgage consultant. He had earnings in 1993 of $5028 for approximately 18 weeks of work, an average of $279 per week. He did not notify the plaintiff that he was employed. In 1994 the defendant had earnings of $20,380, an average of $392 per week. He did not notify the plaintiff that he was employed. In 1995 the plaintiff consulted an attorney to contact the defendant about his employment status. The defendant wrote back to the plaintiffs attorney and revealed, for the first time, that he worked as a mortgage consultant, dividing his time between two mortgage companies. He stated: "At no time during 1993 or 1994 has my net CT Page 3888 disposable income exceeded an average of $450 per week."
The defendant began earning in excess of $450 per week beginning in 1996. He earned $37,707 in 1996, an average of $725 per week The defendant did not make any notification to the plaintiff. Since then, the defendant's earnings have continued to increase. He has current earnings of $2,440 per week. On December 5, 2002 the parties agreed to modify child support to $320 per week, without prejudice, as to retroactivity, insurance payment, imputed child support for other children and any other factor which may effect child support.
III. Motion for Contempt
The main issue in this case stems from paragraph 10(b) of the separation agreement. That paragraph has changes made in long hand and initialed by the parties. Paragraph 10(b), with the changes, states as follows (strikethrough indicating agreed deletions; double underlines, indicating agreed additions):
 "Upon becoming employed, the Defendant shall report his income over and above what he is currently receiving from unemployment and such increase shall be grounds for modification. The modification of child support shall be done on a de novo basis, taking into consideration that the amount Defendant is currently paying is in excess of the child support guidelines. Any modification will be in conformity with the child support guidelines including such deviation as the Court may find appropriate. Further, the parties shall exchange annually income tax returns. Any deviation in income of the Defendant discovered as a result of the income tax return exchange for the year 1993
shall give rise to a modification by Plaintiff of child support back to when the increased (undisclosed) income was first received for the year 1992, 1993. It shall not be grounds for modification unless and until the Defendant has a net disposable income in excess of Four Hundred Fifty ($450) Dollars per week." Agreement, p. 11.
The plaintiff argues that the defendant had an obligation under the separation agreement to notify her when his weekly income began to exceed $450 per week. The defendant argues that his only obligation was to notify the plaintiff when he became employed. Further, the defendant claims that although he was late in making this notification, he did tell the plaintiff that he was employed in 1995, before he was eaming $450 per week. The parties have stipulated as to the amounts which would be due to the plaintiff since 1996 if the defendant was obligated to notify the CT Page 3889 plaintiff in 1996 when his average income exceeded $450 per week. These amounts total $37,300, exclusive of interest.
The language of the separation agreement incorporated in the judgment is to be regarded and construed as a contract. Issler v. Issler,250 Conn. 226, 235 (1999). Accordingly, resolution of the plaintiffs claim "is guided by the general principles governing the construction of contracts. A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms."Id.
The language of the separation agreement is clear and unambiguous. The defendant was required to report to the plaintiff when he became employed and his income exceeded what he was receiving from unemployment. He was receiving $288 per week from unemployment. During 1994 the defendant averaged $392 per week. Therefore, he was obligated to report to the plaintiff. This report was not made until February 1995. However, the plaintiff suffered no harm because the weekly income had not yet exceeded $450 per week, the threshold for a modification.
The plaintiff argues that the defendant had a continuing duty to report to the plaintiff when his income exceeded $450 per week. But, the agreement does not say this. It would have been easy to say, if it had been the intent of the parties. The obligation to make this sort of notification by exchanging income tax returns annually was deleted from the agreement. The court cannot find ambiguity in this agreement even though it means that the children will be deprived of support to which they might otherwise be entitled. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. Sachs v. Sachs, 60 Conn. App. 337, 343 (2000). For this reason, the defendant had no duty to notify the plaintiff when his income exceeded $450 per week. Therefore, the defendant is not in contempt of court.
IV. Motion to Modify
The plaintiffs first reason for the motion to modify is that the defendant increased his income since the date of the dissolution. This reason has been addressed by the parties themselves in their agreement of CT Page 3890 December 5, 2001 increasing the child support to $320 per week. The court has reviewed the child support guidelines worksheets and finds that $320 per week is the proper presumptive child support.
The plaintiffs second reason for the motion to modify the amount of the child support is that the defendant is now exercising less visitation with the children than provided in the separation agreement. As a result, the plaintiff claims that her expenses have increased. She seeks an upward deviation from presumptive support. The agreement incorporated in the judgment provides that the defendant shall have the children every other weekend from Friday at or about 5:00 p. m. to Sunday at or about 7:00 p. m., and one overnight per week with Benjamin and one evening per week for dinner. In addition, the defendant was to have the children for services on the Jewish holidays and two weeks in the summer. The parties followed this schedule until March 1995 when the defendant informed the plaintiff that he would no longer take the children on the Friday evenings of his weekends. Therefore, his weekends begin at 10:00 a.m. on Saturday. The defendant has cancelled the weekend visits eight times within the past year. He does not take the children on the Jewish holidays. He no longer takes the children for two weeks in the summer.
The reduction in the visitation schedule is a substantial change of circumstances. It undoubtedly results in an increase in the plaintiffs expenses. There are two additional meals which the plaintiff must provide for each child every other week plus additional meals for the cancelled weekends, holidays and vacations. The visitation now being exercised by the defendant is less than the "normal visitation schedule" envisioned by the Guidelines, i.e., two overnights on alternate weekends. The present schedule is certainly substantially less than the parties envisioned when they signed the separation agreement. Section 46b-215a-3 (b)(6)(B) and (C) of the Guidelines provide that a deviation from presumptive child support may be made if presumptive support would be inequitable or inappropriate based upon the best interests of the child or other equitable factors. In light of the decrease in visitation from a normal schedule, and from that envisioned by the parties at the time of the dissolution, it would be equitable and in the best interest of the minor children that a deviation be made in presumptive support. An upward deviation of $30 per week would be appropriate. Therefore, child support shall be increased to $350 per week retroactive to November 6, 2001 when the motion for modification was served upon the defendant. The defendant shall pay the arrearage incurred as a result of this order within 30 days.
____________________ John W. Pickard, J. CT Page 3891